Filed 4/10/14  P. v. Walton CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ROMELE ISAAC WALTON,<br><br>     Defendant and Appellant. | C074454<br><br>(Super. Ct. No. 13F00110) |

Appointed counsel for defendant Romele Isaac Walton asked this court to review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Our review of the record disclosed a clerical error on the abstract of judgment that requires correction.  Finding no other arguable error that would result in a disposition more favorable to defendant, we will affirm the judgment.

1

# I

In the month of December 2012, Charmaine Evans was using a back bedroom window to enter her apartment. On December 3, she noticed the window screen appeared to have been damaged and thought someone might be inside her apartment. When she got to the living room, she noticed items missing, including Xbox, Wii and Nintendo consoles and games, DVD movies, and a speaker. Her drawers had been emptied on the living room floor. She called the police.

Evans admitted that she had a prior 2006 felony conviction for selling narcotics and a 2012 conviction for stealing items from WalMart. She said she had known defendant for about three or four months through her son's father, and defendant had been in her apartment three times. The police dusted for fingerprints but none of the prints matched defendant.

Earlier that day, Jesus Jimenez, a resident and part-time maintenance man at the apartment complex, went to Evans's apartment to complete some repairs. He saw defendant coming out of Evans's apartment carrying a large laundry-type bag with a drawstring. The bag appeared full and there appeared to be a square-shaped item, like a VCR, inside the bag. Jimenez spoke briefly with defendant, who then left the complex and went to a bus stop. Jimenez did not know defendant but had previously seen him at least 20 times at the complex.

Jimenez knocked on Evans's door but no one answered. Evans arrived about 15 to 20 minutes later. Jimenez told her to check her apartment because she might have been "robbed." Jimenez testified that Evans used her key to enter the apartment. Evans said items had been taken and she called the police.

Jimenez identified defendant from a photographic lineup as the person he saw leaving Evans's apartment. A search of defendant's name in the pawnshop repository software led officers to a pawnshop where defendant had pawned various games and an Xbox. Evans identified the items as those stolen from her apartment. She also told

officers the user name for her Xbox, and that name matched the user name for the recovered Xbox. The pawnshop operator could not identify defendant in court, but at the time of the transaction, he had recorded defendant's identification and thumbprint.

A jury found defendant guilty of first degree burglary. (Pen. Code, § 459.) In bifurcated proceedings, the trial court found that defendant served two prior prison sentences. (Pen. Code, § 667.5, subd. (b).)

Prior to sentencing, defendant made a *Marsden*[1] motion claiming trial counsel failed to adequately impeach witnesses, conduct cross-examination, discuss available defenses, or investigate or procure potentially exculpatory evidence. Defendant's trial counsel replied, saying she had met with defendant and discussed the nature of the circumstantial case, trial strategy and witness impeachment. She indicated she communicated with defendant throughout the trial and sought to incorporate those areas of cross-examination that were relevant and not excluded by the Evidence Code. She said by the time she was assigned the case, any video footage from the pawnshop no longer existed. The witnesses were impeached regarding inconsistent statements and their ability to perceive details, and the victim was impeached with her prior criminal record. Although defendant suggested additional grounds for impeachment, the trial court indicated it would not have permitted counsel to utilize those grounds. The trial court also noted, based on its observations of the trial, that trial counsel had made a very strong closing argument and had thoroughly impeached the witnesses. The trial court found counsel's representation of defendant was excellent and denied defendant's *Marsden* motion.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

Defendant also made a *Romero*[2] motion to dismiss his prior strike conviction. After considering defendant's entire criminal record, including multiple felonies and parole violations, and the facts of the current case, the trial court found defendant was within the spirit of the three strikes law and denied the motion.

The trial court sentenced defendant to four years for the burglary (the low term of two years doubled because of the strike), a consecutive five years for the prior conviction allegation, and an additional year for each of two prior prison term allegations, for an aggregate sentence of 11 years. The trial court awarded defendant 409 days of presentence credit and ordered him to pay a $400 restitution fine (Pen. Code, § 1202.4), a $400 parole revocation fine (Pen. Code, § 1202.45), a $40 court operations fee (Pen. Code, § 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373). The trial court also ordered defendant to pay $1,790 in direct victim restitution.

II

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief.

Defendant filed a supplemental brief claiming (A) insufficient evidence to support the burglary conviction, (B) ineffective assistance of counsel, (C) instructional error, and (D) trial court error in imposing victim restitution.[3] We address each contention in turn.

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[3] Attached to defendant's supplemental brief was a petition for writ of habeas corpus and a number of documents outside the record of appeal. The petition for writ of habeas corpus has been detached from the supplemental brief and will be filed, considered, and resolved separately.

4

## A

Defendant claims there was insufficient evidence to support his conviction for burglary. He asserts Evans and Jimenez were not credible witnesses because they had a history of drug use and inconsistencies in their testimony. The trial court determined there was no basis to allow impeachment based on drug use, and our review of the record does not identify error in that regard. Evans had a criminal history that included theft, but that information was provided to the jury.

" '[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts . . . .' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not reweigh conflicting evidence or evaluate the credibility of witnesses; rather, an appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise. (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

There was sufficient evidence to support the burglary conviction. Defendant had previously been inside Evans's apartment, there were signs the apartment had been broken into, and defendant was seen leaving the apartment with a bag full of items approximately 15 minutes before Evans discovered the theft. One item in the bag was shaped like a game console. A few days later, defendant pawned Evans's property at a pawnshop. It was reasonable for the jury to infer from this evidence that defendant burglarized Evans's apartment.

## B

Defendant also claims ineffective assistance of counsel, reiterating many of the complaints made at the *Marsden* hearing in the trial court: that counsel failed to adequately impeach witnesses or conduct adequate cross-examination, did not adequately discuss available defenses with him, and failed to investigate or procure potentially exculpatory evidence. Defendant also claims the plea offers were not properly explained to him.

The record does not support defendant's assertion that the plea offers were not explained to him. There were specific on-the-record discussions with defendant regarding the various offers, and defendant expressly indicated he was "not interested" in accepting a plea bargain.

To the extent defendant is claiming defense counsel did not discuss trial strategy with him, failed to investigate and failed to procure potentially exculpatory evidence, his arguments rely on matters not reflected in the record on appeal. " '[O]ur review on direct appeal is limited to the appellate record.' [Citation.] '[B]ecause defendant's claim is dependent upon evidence and matters not reflected in the record on appeal, we decline to consider it . . . .' [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 952.) These are matters more properly resolved in the context of defendant's petition for writ of habeas corpus.

Defendant's remaining claims of ineffective assistance of counsel are that trial counsel failed to properly impeach witnesses or conduct adequate cross-examination. To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. If he fails to establish one prong, we need not address the other. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Having examined the record, we agree with the trial court's assessment that counsel properly impeached the witnesses with their admissible criminal history, inconsistencies in their statements, and their ability to accurately perceive events. Because counsel's performance was not deficient, defendant's claim of ineffective assistance of counsel lacks merit.

## C

Defendant next asserts instructional error. He points out that CALCRIM No. 200 says, among other things: "If I repeat any instruction or idea, do not conclude that it is

6

more important than any other instruction or idea just because I repeated it." Defendant asks: "Then why repeat them? That is questionable."

In addition, defendant claims that many of the instructions did not apply to his case.

Referencing CALCRIM No. 201, he asks how anyone would know if jurors were using the internet, a dictionary or other reference materials. He answers his question by saying: "We wouldn't have known and this rule could have been violated."

Regarding CALCRIM No. 202, he asks: "How is it that the individuals who get[] to decide defendant[']s fate get to destroy notes of how they made the determination of my guilt?"

As for CALCRIM No. 222, he states: "[With] witness [*sic*] lying under oath how can that be used as evidence?"

Defendant claims, without further explanation, that CALCRIM No. 226 was violated and CALCRIM No. 315 was not followed by the jurors.

Citing CALCRIM No. 1700, he says the burglary was not proven, claiming "Jimenez said that he noticed others hanging out but did not recall seeing defendant." And regarding CALCRIM No. 1701, defendant argues first degree burglary is the entry of an inhabited house (not a house or apartment); and all other degrees are second. He says a house is different from an apartment, adding there is no way that all 12 jurors unanimously agreed upon a guilty verdict without some sort of prejudice.

Moreover, he notes that CALCRIM No. 3590 says: "On behalf of all the judges of the court, please accept my thanks for your time and effort." Defendant claims the instruction should have referred to only one judge and he asks, "Who were the others?"

Once again, to the extent defendant's claims relate to matters outside the record, we cannot consider them on appeal. In addition, we presume the jury followed the instructions given, unless there is some clear indication in the record to the contrary. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803.) There is no such indication

7

here. Defendant did not object in the trial court to any of the instructions given. " 'Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights. [Citations.] The question is whether the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].' [Citation.]" (*People v. Battle* (2011) 198 Cal.App.4th 50, 64-65.) We have reviewed the instructions given and find no error, much less a miscarriage of justice warranting a reversal.

## D

In addition, defendant contends the trial court erred in imposing victim restitution, asserting that he does not have the ability to pay and the amount imposed was inappropriate. But defendant did not object to the amount of restitution imposed by the trial court, and he did not request a restitution hearing to determine the propriety of the amount or his ability to pay. Under the circumstances, his contention is forfeited. (*People v. O'Neal* (2004) 122 Cal.App.4th 817, 820; *People v. Le* (1995) 39 Cal.App.4th 1518, 1523.)

## III

Our review of the record discloses a clerical error on the abstract of judgment. The abstract does not reflect the $40 court operations fee orally imposed by the trial court. "Courts may correct clerical errors at any time, and appellate courts (including this one) that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We will direct the trial court to correct the abstract of judgment.

## IV

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment reflecting the imposition of the $40 court operations fee, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                                          MAURO           , J.


We concur:


            RAYE            , P. J.


            ROBIE           , J.


9