Filed 4/29/15  P. v. Morales CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061011 |
| v. | (Super.Ct.No. RIF1104509) |
| SEBASTIAN GONZALES MORALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge. Affirmed.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant, Sebastian Morales, of five counts of committing oral copulation or sexually penetrating a victim 10 years old or younger (Pen. Code, § 288.7,

1

subd. (b))[1] and one count of committing a lewd and lascivious act on a minor under the age of 14. (§ 288, subd. (a).) He was sentenced to prison for three consecutive terms of 15 years to life, plus six years, and appeals.

Upon defendant's request, this court appointed counsel to represent him on appeal. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed. 2d 493], setting forth a statement of the case, a summary of the facts, and potential arguable issues and requesting this court to conduct an independent review of the record. We discuss those issues later in this opinion and conclude that none are meritorious.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

### FACTS

The victim's mother testified that she began cohabiting with defendant, her boyfriend, when the victim was three years old. They, and the victim's two younger brothers, moved to an apartment in Corona when the victim was seven years old. The victim testified that while living in that apartment, on two or three occasions, defendant entered the bedroom the victim shared with one of her brothers in the middle of the night, pulled down her pajama bottoms and put his finger in her vagina and his penis in her

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

mouth.    After the first such incident, defendant twice had the victim put lotion on his naked body, and he on hers, while they were in his bedroom during the day.  During these incidents, defendant had the victim rub up and down his penis with both of her hands.  Defendant told the victim not to tell about these incidents.  When the family moved to an apartment in Riverside, all five members slept in the same bedroom.  On one occasion, defendant put his penis in the victim's mouth while the victim's mother and brothers slept.  The victim told her aunt, who was seven months older than the victim and living with the victim in her parents' (the victim's grandparents') house, when the victim was ten and one-half years old.   The aunt told the aunt's mother, who was the victim's grandmother, the latter told another aunt, and that aunt told the victim's mother.

## POTENTIAL ARGUABLE ISSUES AND DISCUSSION

There was substantial evidence to support all six of the convictions, as stated above.

The sentencing court imposed a fine pursuant to section 290.3 of $2,800, representing a fine of $300 for defendant's first conviction in this case and fines of $500 each for the remaining five convictions.  Section 290.3, subdivision (a) provides, in pertinent part, "Every person who is convicted of [a violation of 288.7 or 288] . . . shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars . . . upon the first conviction or a fine of five hundred dollars . . . upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay

3

the fine." In *People v. O'Neal* (2004) 122 Cal.App.4th 817, 822, the appellate court observed, "[The defendant] argues nothing permits the imposition of multiple section 290.3 fines in the same proceeding. But the statute refers to fines for convictions, not fines for proceedings. [The defendant's] argument is based on the theory that his plea agreement must be treated as if it involved only one conviction. But he pled guilty to two counts of committing a lewd act upon a child. Each count involved a separate conviction. Because there were two counts, [the defendant] had a second or subsequent conviction under section 290.3 [¶] The statute does not limit the number of fines that may be imposed for multiple convictions in the same case. If the Legislature wanted to impose such a limitation, it would have done so. [Citation.] [¶] . . . [A]dopting [the defendant's] position would mean there would be different fines for defendants who had the same number of convictions. If the prosecutor joined multiple counts in one case there would be a single fine, but there would be multiple fines if each count was filed in a separate action. The Legislature did not intend such a result because it would be basing fines on the prosecutor's procedural choice, not the number of convictions." We agree with the reasoning in *O'Neal* and adopt it as our own, noting that no published opinion has since it was authored disagreed with it.

Defendant's mother testified for the defense that defendant interacted with young female family members appropriately and she opined, based on that, that he had no sexual interest in children. During cross-examination of the mother, the prosecutor asked her if defendant ever talked to her about "the kind of porn he likes." The trial court

sustained defense counsel's objection that the question was outside the scope of testimony and evidence. Later, the trial court explained that it had sustained defense counsel's objection because it had asked the prosecutor "if she had information in her possession that would be the foundation to the question and with the anticipation the answer would agree with the premise that the defendant liked child pornography, which might be inconsistent, of course, with the testimony of [the mother] that [defendant] displayed at no time any sexual interest in any minor child while in the presence of [the mother]. [¶] But [the prosecutor] indicated, and I believe truthfully, that she had no such information and . . . the question did not mention child pornography. I think it talked about pornography generally. I sustained the objection and [the prosecutor] moved on from that point." The prosecutor added, "I was just asking to lay the foundation as to what [the mother] knew regarding the defendant's sexual preference. It was not whether or not he actually watched porn, nor was I going to go any further than that question." The trial court responded, "I . . . indicate[d] that if the defendant was looking at . . . pornography involving adult[s], . . . that, in and of itself, in my mind, may not be relevant to these proceedings. [¶] . . . [¶] . . . [The prosecutor said at sidebar] that there is no evidence that the defendant viewed pornography . . . to any extent—whether it . . . involve[ed] a minor or an adult."

We find no prosecutorial misconduct, that is, the use of deceptive and reprehensible methods (*People v. Avila* (2009) 46 Cal.4th 680,711) in the question the prosecutor asked of defendant's mother. Moreover, because it was successfully objected

5

to by defense counsel, and no answer was given, it could not possibly have prejudiced defendant.

During argument to the jury, defense counsel maintained that the victim's mother had put the victim up to accusing defendant and corroborated at trial the latter's account of telling the mother about the molestations because she was angry at defendant for rejecting her and wanted to keep defendant from gaining custody of the son they shared. Defense counsel argued that defendant had no opportunity to commit the acts alleged to have taken place in Corona and they could not have happened the way the victim described them. He asserted that the victim's interaction with defendant, her failure to report the acts soon after they occurred, the inconsistencies in her stories and between hers and her aunt's, the lack of evidence that defendant was inappropriate with any other young female family members and the absence of physical evidence suggested that defendant had not molested the victim. He argued that defendant would have had to have been foolish to molest the victim in their Riverside apartment, where her mother and brothers slept in the same room with them. He asserted that there was no evidence that defendant liked to be around children—in fact, the evidence was that he did not, therefore, the molestations "didn't happen." He argued that the victim got her knowledge of sexual facts by watching her mother and defendant engage in sexual activity. In response, during her closing argument, the prosecutor said that in order to acquit defendant, the jury would have to disbelieve the victim, her mother and her aunt. The prosecutor continued, "And if you go through all of this conspiracy theory, if you go

6

through all of the testimony and you believe that this conspiracy theory happened, that with no evidence [the mother] is a vindictive malicious person, regardless of what defense witnesses say [to the contrary], regardless of what evidence came in, acquittal. Put him back in your community." Defense counsel objected on the basis that this was improper argument. The trial court instructed the jury, "[N]othing the attorneys say is evidence. Do not consider the last statement of counsel for any purpose at all. You're not to consider the impact of acquitting somebody insofar as putting that person back into your community. That is not to be considered by you. That's improper argument." To the extent the prosecutor may have committed misconduct in making the comment about releasing defendant into the community, defendant was not prejudiced because the trial court instructed the jury to ignore it and we presume the jury followed this directive. (*People v. Adams* (2014) 60 Cal.4th 541, 578.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
_____
P. J.


We concur:

McKINSTER
_____
J.

KING
_____
J.

7